IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Thomas J. McPherson, | ) Civil Action No.: 4:16-cv-2725-BHH |
| Plaintiff, | ) |
| vs. | ) **ORDER AND OPINION** |
| CSX Transportation, Inc., | ) |
| Defendant. | ) |

This matter is before the Court on Defendant's motion to dismiss Plaintiff's amended Complaint. (ECF No. 16.) For the reasons set forth below, the motion is GRANTED.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Thomas J. McPherson is a former train engineer for Defendant CSX Transportation, Inc. (ECF No. 10 ¶ 4.) On July 25, 2009, Plaintiff received a citation from the North Charleston Police Department for obstructing a highway while operating one of Defendant's trains in North Charleston, South Carolina. (*Id.* ¶¶ 5–9.) According to Plaintiff, the Police Department "lacked the legal authority" to issue the citation. (*Id.* ¶ 9.)

Plaintiff alleges that Defendant's supervisors played an active role as the incident unfolded. Specifically, one of Defendant's supervisors, Michael Wiley ("Wiley"), was present "for all conversations with law enforcement and kept a carbon copy of the original citation issued to Plaintiff." (*Id.* ¶ 10.) Wiley "ensured Plaintiff that Defendant's legal department would take care of the improperly issued citation pursuant to company

1

policy and procedure." (*Id.* ¶ 11.) Later that evening, Plaintiff met with the Florence supervisor, Joseph Edelbrock ("Edelbrock"), "to discuss the next steps to be taken with regard to the pending citation." (*Id.* ¶ 13.) Edelbrock "made a photocopy of the citation and further ensured Plaintiff that Defendant's legal department" would handle the citation. (*Id.* ¶ 14.)

Plaintiff alleges that "Defendant's policies and procedures" required that he follow the directives of his supervisors and prevented him from independently disputing the citation "without risking disciplinary action and/or discharge." (*Id.* ¶ 15.) He further alleges that "Defendant intended to retain outside counsel to litigate the citation . . . , but failed to follow its routine protocol of challenging citations . . . due to the neglect of its managerial employees." (*Id.* ¶ 19.) According to Plaintiff, this failure "was in contravention of Defendant's internal policies and procedures, in contravention of Defendant's employment contract with the Plaintiff, and in contravention of Defendant's contract with and obligations to the United Transportation Union." (*Id.* ¶ 20.)

Plaintiff alleges that Defendant failed to take any action to challenge the citation, unbeknownst to him, and the City of North Charleston tried Plaintiff in his absence for the violation listed on the citation. (*Id.* ¶ 23.) A bench warrant was then issued for Plaintiff's arrest. (*Id.*) Despite this, Plaintiff alleges that when he spoke with his supervisors shortly after his court date, he was informed that the citation had been taken care of on his behalf. (*Id.* ¶ 24.) Plaintiff left his employment with Defendant in December 2009. (*Id.* ¶ 25.) On March 20, 2015, Plaintiff was pulled over for a minor traffic infraction in

Florence, South Carolina, which revealed the active bench warrant for his arrest. (*Id.* ¶ 26.) Plaintiff was then arrested. (*Id.* ¶ 27.)

On June 13, 2016, Plaintiff filed this civil action alleging a negligence claim against Defendant for its failure to exercise due care in relation to the above events. Plaintiff asserts that "[a]s a result of his arrest and the acts and omissions of Defendant," he has "suffered actual damages, including but not limited to physical restraint, physical injury, costs associated with the criminal charge and arrest, stigmatism of reputation and character, loss of enjoyment of life, wrongful imprisonment, false imprisonment and confinement, deprivation of liberty, mental and emotional distress, worry, and anxiety." (*Id.* ¶ 29.)

On August 24, 2016, Defendant moved to dismiss Plaintiff's amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 16.) Plaintiff filed a response on August 25, 2016 (ECF No. 18), to which Defendant replied on September 6, 2016 (ECF No. 19). The Court has reviewed the briefing and the applicable law, and now issues the following ruling.

**STANDARD OF REVIEW**

A plaintiff's complaint should set forth "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). To show that the plaintiff is "entitled to relief," the complaint must provide "more than labels and conclusions," and "a

3

formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. In considering a motion to dismiss under Rule 12(b)(6), the Court "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff . . . ." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 255 (4th Cir. 2009).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must state "a plausible claim for relief." *Iqbal*, 556 U.S. at 679. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Stated differently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)). Still, Rule 12(b)(6) "does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Colon Health Centers of Am., LLC v. Hazel*, 733 F.3d 535, 545 (4th Cir. 2013) (quoting *Neitzke v. Williams,* 490 U.S. 319, 327 (1989)). "A plausible but inconclusive inference from pleaded facts will survive a motion to dismiss . . . ." *Sepulveda-Villarini v. Dep't of Educ. of Puerto Rico*, 628 F.3d 25, 30 (1st Cir. 2010) (Souter, J.).

## DISCUSSION

Defendant moves to dismiss the amended Complaint, arguing, *inter alia*, that it fails to allege a legally recognized duty Defendant owed to Plaintiff. (ECF No. 16-1 at 2.)

"An essential element in a cause of action based upon negligence is the existence of a legal duty of care owed by the defendant to the plaintiff. Without a duty, there is no actionable negligence." *Oblachinski v. Reynolds*, 706 S.E.2d 844, 845–46 (S.C. 2011); *see also Steinke v. S.C. Dep't of Labor, Licensing & Regulation*, 520 S.E.2d 142, 149 (S.C. 1999) ("In a negligence action, a plaintiff must show that the (1) defendant owes a duty of care to the plaintiff, (2) defendant breached the duty by a negligent act or omission, (3) defendant's breach was the actual and proximate cause of the plaintiff's injury, and (4) plaintiff suffered an injury or damages."). "Whether the law recognizes a particular duty is an issue of law to be determined by the court." *Ellis v. Niles*, 479 S.E.2d 47, 49 (S.C. 1996). An affirmative legal duty may be created by statute, a contractual relationship, status, property interest, or some other special circumstance. *Madison v. Babcock Ctr., Inc.*, 638 S.E.2d 650, 656–57 (S.C. 2006). However, South Carolina courts will not extend the concept of a legal duty of care in tort liability beyond reasonable limits. *Huggins v. Citibank, N.A.*, 585 S.E.2d 275, 277 (S.C. 2003) (holding that the relationship between banks and potential victims of identity theft was too attenuated to establish a duty giving rise to a cause of action for negligent enablement of imposter fraud).

"Ordinarily, the common law imposes no duty on a person to act. Where an act is voluntarily undertaken, however, the actor assumes the duty to use due care." *Hendricks v. Clemson Univ.*, 578 S.E.2d 711, 714 (S.C. 2003) (citing *Russell v. City of Columbia*,

406 S.E.2d 338, 339 (S.C. 1991)). The recognition of a voluntarily assumed duty in South Carolina jurisprudence is rooted in the Restatement of Torts, which states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323.

The amended Complaint alleges that "Defendant undertook and assumed a duty to use reasonable care to appear on Plaintiff's behalf and challenge the improper citation that was issued during the course and scope of Plaintiff's employment with Defendant." (ECF No. 10 ¶ 31.) While the amended Complaint appears to rely mainly on the voluntary assumption of duty doctrine to establish a duty in this case, Plaintiff asserts in his brief that Defendant's "duty to act with due care arises under multiple provisions of South Carolina common law," specifically through a contractual relationship, status, or some other special circumstance. (ECF No. 18 at 6.) Thus, the Court will consider whether a duty was created through the circumstances highlighted by Plaintiff before addressing the applicability of the voluntary assumption of duty doctrine.

### A.     Duty Arising from a Contract

As the source of Defendant's duty arising from a contractual relationship, Plaintiff asserts that Defendant has entered into multiple contracts relevant to Plaintiff's employment, including: (1) individual employment contracts with its employees, including

Plaintiff; (2) contracts with the United Transportation Union ("UTU"), of which Plaintiff was a member; and (3) contracts and private agreements with the Federal Railroad Administration ("FRA"). (ECF No. 18 at 6–7.) Plaintiff also asserts that the terms of his employment were further governed by various regulations promulgated by the FRA. (*Id.* at 7.)

Plaintiff acknowledges that it may not be a direct party to the contracts with the UTU and FRA, but contends that a duty may still arise out of these contracts because "a tortfeasor may be liable for injury to a third party arising out of the tortfeasor's contractual relationship with another, despite the absence of privity between the tortfeasor and the third party." (*Id.* (quoting *McCullough v. Goodrich & Pennington Mortg. Fund, Inc.*, 644 S.E.2d 43, 46 (S.C. 2007)).) Plaintiff also admits that he cannot cite any specific contractual provisions giving rise to this duty and claims he will need discovery to be able to do so. However, he asserts that he "has illustrated" that Defendant adopted the "practice of hiring counsel to represent locomotive operators who were ticketed in the scope and course of their employment." (*Id.*) Plaintiff apparently believes this is sufficient at the dismissal stage to establish a duty arising from a contractual relationship.

There are several flaws with Plaintiff's reliance on these alleged contracts as the source of Defendant's duty. First, to the extent the duty contemplated here arises out of Plaintiff's individual employment contract, discovery should not be necessary. Plaintiff would have the same access to this document as Defendant. Furthermore, to the extent Plaintiff bases the duty on the contractual relationship between Defendant and UTU or Defendant and FRA, Plaintiff has provided no explanation for how these contracts

establish that Defendant may be liable for injury to Plaintiff, as contemplated in the allegations. Plaintiff cites no cases where a court has found a contractual basis for a legal duty to a third party under analogous facts.[1] In fact, Plaintiff fails to offer any helpful analysis on this issue.

The allegations in the amended Complaint fail to establish a contractual relationship giving rise to Defendant's alleged duty to Plaintiff and there are no grounds to find a duty on this basis under the arguments put forth by Plaintiff.

## B.     Duty Arising from Status

Plaintiff next briefly argues that Defendant's duty arises from "the 'status' of its train engineers as employees operating within a unique federal jurisdiction." (ECF No. 18 at 7.) Other than rebutting arguments made by Defendant on this issue, the only supportive argument Plaintiff makes here is that "the status of [an] employee, particularly one hired pursuant to a contract, fundamentally alters the status between two parties and can give rise to a duty to act with due care."[2] (*Id.* at 8.) Plaintiff appears to place some reliance on *Johnson v. Robert E. Lee Academy, Inc.*, 737 S.E.2d 512 (S.C. Ct. App.

---

[1] A review of South Carolina case law does not support Plaintiff's assertion that a duty can be found on this contractual basis. *See*, *e.g.*, *Dorrell v. SCDOT*, 605 S.E.2d 12, 18 (S.C. 2004) (holding that a subcontractor hired by SCDOT to repave a roadway owed a duty to motorists using the road); *Barker v. Sauls*, 345 S.E.2d 244 (S.C. 1986) (holding that an insurance broker who contracted to sell workers' compensation coverage to an employer was liable to the employee who was denied workers' compensation benefits because the broker failed to procure coverage on behalf of the employer); *Terlinde v. Neely*, 271 S.E.2d 768, 770 (S.C. 1980) (holding that a contract between a homebuilder and homeowner extended to future home purchasers because, by placing his product into the stream of commerce, the builder owed a duty of care to the product's users); *Edward's of Byrnes Downs v. Charleston Sheet Metal Co.*, 172 S.E.2d 120, 123 (S.C. 1970) (holding that in performing a contract with a building owner for the installation of a roof, the roofer owed a duty of due care to the occupant of the adjacent building to which the work was being performed).

[2] Here, Plaintiff cites his allegation in the amended Complaint that "Defendant's failure to retain outside counsel to challenge the traffic ticket inappropriately issued to the Plaintiff was in contravention of Defendant's internal policies and procedures, in contravention of Defendant's employment contract with the Plaintiff, and in contravention of Defendant's contract with and obligations to the United Transportation Union." (ECF No. 10 ¶ 20.)

8

2012), for the proposition that the employer-employee relationship can give rise to a duty of care based on the status of the parties. However, *Johnson* discussed the scope of the voluntary assumption of duty doctrine—it did not address when a legal duty may arise by status. *Id.* at 513–514. Further, the plaintiff's claims against the employer were not at issue in *Johnson*. Rather, in *Johnson*, the court addressed the plaintiff's claims against an outside accounting firm hired by plaintiff's employer. *Id.* The *Johnson* court did not make any ruling regarding duties between plaintiff and her employer and the case is inapplicable to Plaintiff's arguments here.

In sum, Plaintiff cites no authority that supports finding a duty exists here by virtue of the "status" of Defendant's "train engineers as employees operating within a unique federal jurisdiction" and the amended Complaint does not establish a duty on such grounds. (ECF No. 18 at 7.)

### C. Duty Arising from a Special Relationship

Plaintiff also briefly argues that a "special relationship" "exists in this case given the inability of an individual motorist to appear and successfully defeat a traffic violation on the grounds of federal preemption and federal constitutional law." (ECF No. 18 at 8.) Plaintiff doesn't explain what he means by "federal preemption and federal constitutional law" and does not otherwise elaborate on this line of thought. Rather, he states that in Defendant's relationship with Plaintiff, Defendant "functions as the DMV, the vehicle owner, and the vehicle driver's employer," and states that such a role would naturally mean that Defendant would "insist on being involved in a criminal proceeding arising from the locomotive operation of one of its employees, no matter how trivial." (*Id.* at 8–9.)

He claims "this special relationship is further altered . . . where the employer essentially forbids the employee from doing so himself." (*Id.* at 9.)

Again, Plaintiff cites no authority to support his argument that a duty arose by virtue of a special relationship under these facts and the Court has independently found no support for such an assertion in the case law. In *Bahringer v. ADT Sec. Servs., Inc.*, another court in this district provided a helpful list of scenarios in which a special relationship has been found:

> Examples of such special relationships include those between design professionals and general contractors who work under their supervision, [*Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, 463 S.E.2d 85, 89 (S.C. 1995)] (contractors could maintain negligence action against engineer who supervised them), between lawyers and their clients, *Lloyd v. Walters*, 276 S.C. 223, 277 S.E.2d 888, 889 (1981) (corporation could maintain negligence action against lawyer who had a professional duty to protect its interests), and between corporate consultants and a state agency that is the subject of a report prepared by those consultants. *S.C. State Ports Auth. v. Booz–Allen & Hamilton, Inc.*, 289 S.C. 373, 346 S.E.2d 324, 326 (1986) (state agency could maintain negligence action against corporate consultant when the consultant "undertakes to objectively analyze and compare the attributes of commercial competitors for the purpose of giving one a market advantage over the other").

942 F. Supp. 2d 585, 589–90 (D.S.C. 2013). None of the examples listed in *Bahringer* are analogous to the instant facts, and they are not persuasive to finding a special relationship under the circumstances presented here. In short, the allegations in the amended Complaint fail to establish a special relationship giving rise to Defendant's alleged duty to Plaintiff and there are no grounds to find a duty on this basis under the arguments put forth by Plaintiff.

**D.    Voluntary Assumption of Duty Doctrine**

Finally, Plaintiff asserts that Defendant "undertook to provide a defense to the Plaintiff" and that such an undertaking created a duty to carry out that defense in due care under Restatement (Second) of Torts § 323. (ECF No. 18 at 9.) Defendant objects that the voluntary assumption of duty doctrine is limited "to situations where an actor undertakes a duty to prevent physical harm" and argues that such a situation is not alleged here. (ECF No. 19 at 8).

As Defendant notes, South Carolina courts have generally applied the voluntary assumption of duty doctrine "only to situations in which a person suffers physical harm from the failure to exercise reasonable care and not cases in which financial harm is the only damage." *Founders Ins. Co. v. Richard Ruth's Bar & Grill LLC*, No. 2:13-CV-3035-DCN, 2016 WL 3189214, at *3 (D.S.C. June 8, 2016) (emphasis in original); *see, e.g.*, *Johnson*, 737 at 514 (refusing to apply the doctrine to recognize a duty of care between an accounting firm and a bookkeeper and office manager for the firm's negligence in analyzing financial records, finding firm's "conduct was not undertaken for [bookkeeper's] protection"); *Hendricks v. Clemson Univ.*, 578 S.E.2d 711, 714 (S.C. 2003) ("The line of cases *Miller* [*v. City of Camden*, 451 S.E.2d 401 (S.C. Ct. App. 1994)] discusses have thus far been limited to situations in which a party has voluntarily undertaken to prevent physical harm, not economic injury.").

Here, Plaintiff admits that Defendant's actions were motivated in part by a desire to "protect[] itself from financial harm," but he argues that his arrest and incarceration were also foreseeable results of Defendant's failure to challenge the citation on his behalf. (ECF No. 18 at 10.) He asserts that an issue of fact exists as to Defendant's

motivations for assuming a defense on Plaintiff's behalf and argues that the "physical restraint/physical damage associated with being wrongly arrested and detained" falls under the type of physical harm contemplated in § 323. (*Id.*)

Plaintiff's arguments fail to establish that Defendant voluntarily assumed any duty as contemplated by § 323. As an initial matter, Plaintiff's assertion that a duty arises from the *foreseeability* that Defendant's failure to defend the citation would result in his arrest and incarceration is attenuated at best. The South Carolina Supreme Court has held that "[f]oreseeability of injury, in and of itself, does not give rise to a duty." *Charleston Dry Cleaners & Laundry, Inc. v. Zurich Am. Ins. Co.*, 586 S.E.2d 586, 588 (S.C. 2003). Further, Plaintiff does not even allege that Defendant undertook his defense *in order to prevent* his arrest and incarceration. Such an allegation would indeed be incredulous given that there was no apparent risk of incarceration under the terms of the citation—the statute under which Plaintiff was charged appears to carry only a $25.00 penalty for its violation. *See* S.C. Code Ann. § 58-17-4080 ("If any person, including any conductor of any train of railroad cars or any other agent or servant of any railroad company, shall obstruct unnecessarily any public road or highway by permitting any railroad car or locomotive to be or remain upon or across any street, public road or highway for a longer period than five minutes, after notice to remove such cars has been given to the conductor, engineer, agent or other such person in charge of such train . . . every such person so offending shall forfeit and pay for every such offense any sum not exceeding twenty nor less than five dollars . . . All fines so accruing under the provisions of this

section, when collected, shall be paid over by the magistrate to the county treasurer for the district in which such offense was committed.").

In addition, the Court cannot find that the harm alleged here as a result of Defendant's alleged negligence satisfies the "physical harm" requirement under § 323. The Restatement (Second) of Torts defines "physical harm" as "the physical impairment of the human body, or of land or chattels." § 7(3). There is "an impairment of the physical condition of another's body if the structure or function of any part of the other's body is altered to any extent even though the alteration causes no other harm." Restatement (Second) of Torts § 15 Comment a. Even if Defendant's alleged negligence resulted in Plaintiff's arrest and incarceration, this bare bones allegation, without more, does not establish that Plaintiff suffered physical harm as contemplated by § 323. There is nothing in the amended Complaint or the briefs to support Plaintiff's allegation that he suffered "physical injury." (ECF No. 10 ¶ 29.) In other words, the allegations do not establish that the structure or function of any part of Plaintiff's body was altered due to Defendant's alleged negligence.

Moreover, applying the Restatement to this situation would potentially deter other employees in similar situations from appearing in court and cooperating with authorities. Such a contortion of the Restatement would be poor public policy. *See Johnson,* 737 S.E.2d at 514 (declining to impose on defendant a duty to communicate with police officials regarding an investigation because such an imposition could have a "chilling effect on cooperation with the authorities"); *Underwood v. Coponen*, 625 S.E.2d 236, 239 n.3 (S.C. Ct. App. 2006) ("If we extended the duty to require private landowners

to ensure that their trees do not hinder traffic control devises [sic], we would be discouraging private landowners from voluntarily maintaining vegetation on their property which adjoins a public roadway or highway in an effort to shield themselves from unwarranted liability."); *Staples v. Duell*, 494 S.E.2d 639, 643 (S.C. Ct. App. 1997) (declining to impose duty on defendant to inspect property under circumstances as doing so "would create the highly undesirable precedent of encouraging rural landowners to shield their eyes and never inspect their land").

The amended Complaint fails to establish that Defendant's conduct was undertaken for Plaintiff's protection and that any negligence in its performance resulted in Plaintiff's physical harm. Accordingly, the circumstances of this case do not fit within the existing voluntary assumption of duty framework. The Court declines to expand the doctrine under the facts presented and finds that Defendant owed no legal duty on this basis.

In sum, assuming that Plaintiff's allegations are true and construing all inferences in his favor, the Court finds that Plaintiff has failed to establish that Defendant owed any duty to Plaintiff in defending his citation. Accordingly, the Court finds that Plaintiff's negligence claim should be dismissed.[3] *See Oblachinski*, 706 S.E.2d at 845–46 ("An essential element in a cause of action based upon negligence is the existence of a legal duty of care owed by the defendant to the plaintiff. Without a duty, there is no actionable negligence.")

---

[3] Because the Court finds dismissal appropriate on this basis, it does not address Defendant's other arguments.

14

## **CONCLUSION**

For the foregoing reasons, it is hereby ORDERED that Defendant's motion to dismiss (ECF No. 16) is GRANTED.

**IT IS SO ORDERED.**

/s/Bruce Howe Hendricks
United States District Judge

March 27, 2017
Greenville, South Carolina